UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————

ARIN JOHNSON,

               Plaintiff,

vs.

HIGHLANDS VISTA GROUP
MANAGEMENT LLC,

               Defendant.

Case No.
Hon.

_____/

Jyarland Q. Daniels (P84774)
Brian J. Farrar (P79404)
Attorneys for Plaintiff
STERLING EMPLOYMENT LAW
33 Bloomfield Hills Parkway, Ste. 250
Bloomfield Hills, Michigan 48304
(248) 644-1500
jdaniels@sterlingattorneys.com
bfarrar@sterlingattorneys.com

_____/

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Arin Johnson, by his attorneys Sterling Employment Law, for his Complaint against Defendant and Demand for Jury Trial, submits the following:

### *Parties, Jurisdiction, and Venue*

1. Plaintiff brings this action for a racially hostile work environment and retaliation in violation 42 USC 1981, a hostile work environment based on race, sex and sexual orientation, and retaliation in violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

2. Arin Johnson ("Plaintiff") is an individual residing in Marshall, Michigan, within the Western District of Michigan.

3.      Defendant Highlands Vista Group Management LLC, ("HVG" or "Defendant") is a privately held real estate investment and property management company headquartered in Denver, Colorado.

4.      Defendant owns, manages, and/or operates several apartment communities throughout the country, including in Michigan.

5.      The events giving rise to the causes of action herein occurred in Kalamazoo, Michigan, which is located within the Western District of Michigan.

6.      This Court has subject matter jurisdiction under 28 USC 1331 as Plaintiff asserts claims arising under 42 USC 1981.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 USC 1367(a).

8.      Venue is proper in this court under 28 USC 1391(b)(2) because the events giving rise to the claims occurred in the Western District of Michigan.

### Background Facts

9.      Defendant hired plaintiff on August 18, 2025, as its Area Manager for Western Michigan.

10.     Plaintiff was responsible for monitoring property performance, paying vendor invoices, and training and onboarding new team members at the following properties; Parchment Apartments (Parchment, MI), Lakeside Apartments (Battle Creek, MI), Arbor Crossing Apartments (Muskegon, MI), and Pine Creek Apartments (Holland, MI).

11.     Plaintiff permanently relocated to Kalamazoo, Michigan from St. Petersburg, Florida for employment by Defendant.

12.     Defendant provided a housing discount as a part of its benefit package, thereby tying Plaintiff's housing to his employment.

13.    Plaintiff did not have an established personal network of friends and/or family in west Michigan.

14.    At all relevant times, Plaintiff was the only black employee in management within Defendant's west Michigan operations.

15.    Plaintiff was a dedicated employee and eager to perform well.

16.    Plaintiff took on the additional role of interim manager at another property while serving as an Area Manger.

17.    Plaintiff received positive performance reviews, on his 90-day evaluation and as recently as March 2026.

18.    On or about February 4, 2026, HVG hired Susan Diffenderfer as property manager of Parchment Apartments, reporting to Plaintiff.

19.    Within her first week of employment, the week of February 4, 2026, Diffenderfer repeatedly asked Plaintiff if he had "Mommy issues" and needed a girlfriend. Plaintiff understood "Mommy issues" to be an invitation of wanting to have sex with an older woman.

20.    Diffenderfer regularly subjected Plaintiff to unwanted, sexually suggestive physical contact, including rubbing his arm and touching his shoulders.

21.    To stop Diffenderfer's sexually suggestive comments and unwanted physical contact, Plaintiff felt compelled to disclose to Diffenderfer that he was gay.

22.    Plaintiff cried for several days because he felt forced to disclose his sexual orientation to a colleague to end the sexual harassment.

23.    When Diffenderfer's behavior did not change, Plaintiff made the first of many reports to his supervisor, Graydon Johnson.

3

24. Graydon Johnson laughed in response to Plaintiff's report of Diffenderfer's conduct and stated, "I'm staying out of this."

25. On February 24, 2026, Diffenderfer called Plaintiff stating she wanted to see his "sexy black face" on camera.

26. On the same call Diffenderfer asked Plaintiff if he was going to "rock an afro" instead of being bald."

27. Both comments were reported to Graydon Johnson, to which he again responded with laughter.

28. On or about March 2026, Diffenderfer told Plaintiff "I'll miss your sexy black ass" as he was preparing for a trip to Florida.

29. This was reported to Graydon Johnson.

30. Upon information and belief, one colleague warned another that Corporate didn't like black or gay people and that Plaintiff wouldn't be at the company for long.

31. Plaintiff reported this comment to Human Resources in an email.

32. On or about March 17, 2026, while at Parchment Apartments, Diffenderfer continued and escalated her racially hostile and sexually suggestive conduct by attempting an unwanted massage of Plaintiff's shoulders while recounting a date she had gone on with a black man the night before.

33. Plaintiff immediately removed Diffenderfer's hand and physically moved away from her.

34. During the same conversation, Diffenderfer stated that she had a "black man fetish" and craved black men.

35. Plaintiff told Diffenderfer, "You need to stop. This is inappropriate."

4

36. In shock and dismay, Plaintiff contemporaneously confided the incident to a resident named Amanda, who happened to be sitting on her porch.

37. This incident, too, was reported to Graydon Johnson, who neither responded nor initiated an investigation.

38. On or about March 30, 2026, in the presence of resident Dorilyn Brown, Diffenderfer initiated a conversation with Plaintiff about a black man she had previously dated and stated that Plaintiff resembled his "sexy black ass."

39. Diffenderfer regularly complained to Plaintiff that black residents disliked her because she reminded them of their "slave master."

40. On or about April 6, 2026, Diffenderfer pointed to glazed donuts in the office and told Plaintiff that she hoped he would "glaze" her face that night. Plaintiff understood the comment to be a reference ejaculating on her face.

41. This comment was reported to Plaintiff's supervisor, Graydon Johnson.

42. On or about April 7, 2026, Plaintiff reported to Graydon Johson the continued and regular unwanted touching, and racial and sexual comments directed towards him by Diffenderfer.

43. Graydon Johnson responded, that they would "…need to work around certain things and work through these obstacles to accomplish their goals."

44. On or about April 26, 2026, Plaintiff declined to accompany Defendant's leadership team on a business trip to Chicago because he felt unsupported after repeatedly reporting racial and sexual harassment in the workplace.

45. After learning that Plaintiff would not be traveling to Chicago, Diffenderfer stated during a Microsoft Teams meeting that she was glad Plaintiff had not taken his "sexy

5

black ass" to Chicago and she wanted to make sure no one was taking a bite out of her "chocolate drop."

46.    In or about April 2026, after conducting a tour for a prospective black male resident, Diffenderfer asked Plaintiff if he could guess how "hung" the prospective resident was compared to Plaintiff. Plaintiff understood the term "hung" to refer to the size of a man's penis.

47.    Plaintiff continued to tell Diffenderfer that her comments were unwelcome and inappropriate.

48.    On or about May 4, 2026, Diffenderfer again asked Plaintiff he had "mommy issues" and needed a girlfriend.

49.    Diffenderfer then referred to herself as an "HR nightmare."

50.    On or about May 7, 2026, during an employee celebration, Diffenderfer again used glazed donuts to make sexually suggestive comments to Plaintiff.

51.    Continuing her pattern of using donuts to make sexually suggestive comments, Diffenderfer told Plaintiff that the donuts were not the only thing that was "glazed" and that it was not her first "taste of chocolate."

52.    Diffenderfer then inserted her tongue through the hole of a donut and, while facing Plaintiff, moved the donut in a circular motion for approximately ten seconds in a sexually suggestive manner.

53.    On or about May 11, 2026, Plaintiff pleaded with his supervisor, Graydon Johnson, to replace Diffenderfer as the racial and sexual comments were intolerable.

54.    Graydon Johnson responded that they should focus on the property's performance metrics and, despite Plaintiff's responsibility for overseeing the Parchment property, suggested that Plaintiff visit Defendant's other properties.

55.    On May 20, 2026, Diffenderfer called Plaintiff on his birthday asking if he was bringing his "sexy black ass" into the office and if he would be casually dressed so she could see his legs. Plaintiff reported this incident upon his return to work on May 26, 2026.

56.    On June 1, 2026, Diffenderfer assaulted Plaintiff by jumping onto his back and rubbing her genitals against Plaintiff's body in a grinding motion for several seconds while laughing.

57.    While struggling to maintain his balance and avoid falling, Plaintiff yelled, "Susan! Get off!"

58.    Plaintiff immediately reported the incident to his supervisor and requested that someone from Corporate speak with Diffenderfer.

59.    Visibly shaken by the incident, Plaintiff, while walking to his apartment, happened upon resident Jaqueece Hooker and confided in her about what had just transpired.

60.    On June 18, 2026, after months of repeated complaints to his supervisor and HR of race and sex-based discrimination, Graydon Johnson and COO Melissa Clayton abruptly terminated plaintiff.

61.    Plaintiff was not given a reason for his firing and was told to contact HR.

62.    Defendant later told vendors and other employees that Plaintiff was terminated because he "…was not a good fit."

63.    Given that the CEO had advocated for hiring Diffenderfer over Plaintiff's and others' objections, Plaintiff was concerned that reporting Diffenderfer beyond his immediate supervisor could jeopardize both his employment and his employer-subsidized housing.

64.    Upon his termination, Plaintiff was informed that he was required to vacate his employer-subsidized apartment within seven days.

65.     Plaintiff received an email from Graydon Johnson confirming his termination on June 18, 2026.

66.     Plaintiff responded to the email and addressed his response to the Human Resources Manager, CFO, COO, and CEO.

67.     In this email, Plaintiff expressed his disbelief that he had been terminated after repeatedly reporting a racially hostile work environment and ongoing sexual harassment.

68.     The Human Resources Manager responded that it was surprising Plaintiff had not reported the issues involving Diffenderfer because, "…you did report other matters to HR during that time," in a reference to Plaintiff's report concerning comments about corporate not liking black and gay people.

69.     In said email, Human Resources stated that it took Plaintiff's allegations seriously and would investigate.

70.     Plaintiff offered to participate in the investigation.

71.     More than two months later, no one had contacted Plaintiff regarding the promised investigation or about any of the incidents he had reported.

72.     Defendant treated Plaintiff differently, harassed him, and subjected him to a hostile work environment, and terminated him on the basis of his race.

73.     Defendant was predisposed to discriminate against Plaintiff on the basis of his race and acted in accordance with that predisposition.

74.     The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

75.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected and he was terminated.

## COUNT I
### *Race Discrimination in Violation 42 USC 1981*

76. Plaintiff incorporates the preceding paragraphs by reference.

77. At all material times, Plaintiff was an employee of Defendant, and Defendant was an employer covered by and within the meaning of 42 USC 1981.

78. Plaintiff was qualified for his position.

79. Plaintiff was a member of a protected class.

80. Plaintiff suffered an adverse action that but-for his race would not have occurred.

81. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer, lost compensation, lost benefits, emotional distress, including humiliation and embarrassment, damage to his professional reputation, and other incidental and consequential damages including attorney fees.

## COUNT II
### *Race-Based Hostile Work Environment in Violation of 42 USC 1981*

82. Plaintiff incorporates the preceding paragraphs by reference.

83. Plaintiff was subjected to unwelcome harassment because of his race.

84. The harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment.

85. Defendant knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

86. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer, lost compensation, lost benefits, emotional distress, including humiliation and embarrassment, damage to his professional reputation, and other incidental and consequential damages including attorney fees.

9

## COUNT III
### *Retaliation in Violation of 42 USC 1981*

87. Plaintiff incorporates the preceding paragraphs by reference.

88. Plaintiff engaged in protected activity by opposing race discrimination and a racially hostile work environment.

89. Defendant knew Plaintiff engaged in protected activity.

90. Defendant subjected Plaintiff to a materially adverse employment action.

91. Defendant retaliated against Plaintiff when it terminated his employment.

92. A causal connection exists between Plaintiff's protected activity and the adverse employment action.

93. The retaliatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

94. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer, lost compensation, lost benefits, emotional distress, including humiliation and embarrassment, damage to his professional reputation, and other incidental and consequential damages including attorney fees.

## COUNT IV
### *Race-Based Hostile Work Environment in Violation of Michigan's Elliot-Larsen Civil Rights Act*

95. Plaintiff incorporates preceding paragraphs by reference.

96. At all relevant times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2201.

97. Plaintiff is a member of a protected class.

98. Plaintiff was subjected to unwelcome conduct because of his race.

99.     The conduct sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

100.     Defendant knew or should have known about the harassment and failed to take prompt and appropriate corrective action.

101.     As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer, lost compensation, lost benefits, emotional distress, including humiliation and embarrassment, damage to his professional reputation, and other incidental and consequential damages including attorney fees.

## COUNT V
### *Race Discrimination in Violation of Michigan's Elliot-Larsen Civil Rights Act*

102.     Plaintiff incorporates the preceding paragraphs by reference.

103.     At all relevant times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2201.

104.     Plaintiff was qualified for his position.

105.     Plaintiff was a member of a protected class.

106.     Plaintiff suffered an adverse action where race was a factor.

## COUNT VI
### *Hostile Work Environment Based on Sex (Sexual Harassment) in Violation of Michigan's Elliot-Larsen Civil Rights Act*

107.     Plaintiff incorporates preceding paragraphs by reference.

108.     At all relevant times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2201.

109.     Plaintiff is a member of a protected class.

110.     Plaintiff was subjected to unwelcome sexual conduct or communication.

111.    Plaintiff was subjected to the unwelcome conduct because of his sex.

112.    The unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment or created an intimidating, hostile, or offensive work environment.

113.    Defendant failed to take prompt and adequate remedial action after having been reasonably put on notice of the harassment.

114.    As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer, lost compensation, lost benefits, emotional distress, including humiliation and embarrassment, damage to his professional reputation, and other incidental and consequential damages including attorney fees.

## COUNT VII
### *Retaliation in Violation of Michigan's Elliott Larsen Civil Rights Act*

115.    Plaintiff incorporates the preceding paragraphs by reference.

116.    At all relevant times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2201.

117.    Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2701(a), prohibits retaliation against a person who opposed a violation of the Act, including by making an internal complaint to management or Human Resources.

118.    Defendant's treatment and termination of Plaintiff, as described above, was based, at least in part, on Plaintiff's reporting of a racially and sexually hostile work environment.

119.    Defendant was predisposed to discriminate and retaliate against Plaintiff for reporting racial and sexual comments that were severe and pervasive in nature.

12

120.    The actions of Defendant were deliberate and intentional, and engaged in with reckless indifference to the rights and sensibilities of Plaintiff.

121.    As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Arin Johnson demands judgment against the Defendant as follows:

**A.    Legal Relief:**

1.    Compensatory damages in whatever amount he is found to be entitled;

2.    Exemplary damages in whatever amount he is found to be entitled;

3.    Punitive damages in whatever amount he is found to be entitled;

4.    A judgment for lost wages and benefits in whatever amount he is found to be entitled;

5.    An award of interest, costs and reasonable attorney fees; and,

6.    Whatever other legal relief appears appropriate at the time of final judgment.

**B.    Equitable Relief:**

1.    An injunction out of this Court prohibiting any further acts of wrongdoing;

2.    An award of interest, costs and reasonable attorney fees; and,

3.    Whatever other equitable relief appears appropriate at the time of final judgment.

13

**VERIFICATION**

I declare, under penalty of perjury, that the facts set forth above are true and correct based on my own knowledge, except for those facts stated on information and belief, which I believe to be true based on my own reasonable inquiry.

Dated: August 11, 2026

*Arin Johnson*
_____
Arin Johnson


**JURY DEMAND**

Plaintiff, Arin Johnson, by his attorneys Sterling Employment Law, demands a trial by jury of all issues in this cause.

Respectfully submitted,

STERLING EMPLOYMENT LAW

By:___/s/Jyarland Q. Daniels_____
Jyarland Q. Daniels (P84774)
Brian J. Farrar (79404)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

Dated: August 12, 2026

14